# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

NATHANIEL LAMICE YANCEY,

    Plaintiff,

vs.

TRACY DIETSCH and RANDY CASPERS,

    Defendants.

No. C13-0106-LRR

ORDER

## I. INTRODUCTION

This matter is before the court pursuant to the defendants' motion for summary judgment (docket no. 24). The defendants filed such motion on July 28, 2014. The plaintiff filed a "resistance" (docket no. 25) on August 7, 2014. The defendants did not file a reply.

## II. SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948-49 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Thus, "the substantive law will identify which facts are material." *Schilf*, 687 F.3d at 949 (quoting *Anderson*, 477 U.S. at 248) (internal quotation mark omitted). "To establish a genuine issue of material fact, [a party] may not 'merely point to self-serving allegations, but must substantiate allegations with

sufficient probative evidence that would permit a finding in [his or her] favor.'" *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013) (quoting *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)). Typically, the moving party must support its motion by using "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", to show that there is no genuine issue of material fact before the court. Fed. R. Civ. P. 56(c)(1)(A). Since a "'party's own testimony is often self-serving,'" all "particular factual allegations [must be] scrutinized for 'independent documentary evidence'" to be considered legally competent. *Argenyi*, 703 F.3d at 446 (citations omitted).

The court must view all "the evidence in the light most favorable to the nonmoving party and giv[e] the nonmoving party the benefit of all reasonable inferences." *Crawford v. Van Buren Cnty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1035 (8th Cir. 2010)). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In order to deny a motion for summary judgment, "the evidence must be 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (quoting *Anderson*, 477 U.S. at 248.

Procedurally, "[a] movant for summary judgment . . . must identify those portions of the record which . . . demonstrate the absence of a genuine issue of material fact." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). If the moving party has done so, then the nonmoving party "must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (citing *Torgerson*,

643 F.3d at 1042). "Speculation and conjecture are insufficient . . . ." *Id*. at 794 (citing *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006)). If the record, viewed as a whole, "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 792. (citing *Torgerson*, 643 F.3d at 1042). Throughout the summary judgment stage, "the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." *Schilf*, 687 F.3d at 949 (citing *Anderson*, 477 U.S. at 249).

### III. ANALYSIS

#### A. Overview of Civil Rights Claims under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510

3

U.S. at 271 (42 U.S.C. § 1983 "merely provides a 'method for vindicating federal rights elsewhere conferred.'"); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### *B. The Plaintiff's Failure to Respond*

A proper resistance and supporting documents were due on August 21, 2014. *See* LR 56.b. To date, the plaintiff has not properly resisted the defendants' motion for summary judgment by furnishing evidence, citations or other reasons for denying it. *Id.*; *see also Settlemire v. Watson*, 877 F.2d 13, 14 (8th Cir. 1989) (per curiam) (any party proceeding pro se is expected to be familiar with and follow procedural rules). Although he could have requested an extension of the filing deadline, the plaintiff did not do so, and, consequently, it is appropriate to consider the merits of the defendants' motion for summary judgment. LR 56.c ("If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court. . . ."). Because he never submitted a proper resistance, the plaintiff did not expressly admit, deny or qualify each of the facts set forth in the statement of undisputed material facts that the defendants submitted in support of their motion for summary judgment. *See* LR 56.b.2. The plaintiff's failure to file any response to the defendants' statement of undisputed material facts constitutes an admission of each of these facts. *See* LR 56.b.; *accord* Fed. R. Civ. P. 56(e)(2). Given the plaintiff's admission of the facts included in the defendants' statement of undisputed material facts and the plaintiff's failure to come forward with any evidence, it is clear that the defendants are entitled to judgment as a matter of law with respect to the plaintiff's failure to protect from harm claim.

And, despite the plaintiff's failure to take appropriate action, the court reviewed the law that is applicable to the plaintiff's claims, the facts that the plaintiff asserts in his complaint, the additional facts that the plaintiff included in his motions and resistance and the statement of undisputed material facts which are deemed admitted by the plaintiff. *See* Fed. R. Civ. P. 56(e)(2)-(4) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion, . . . grant summary judgment if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to it . . . or . . . issue any other appropriate order."); *see also Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) (explaining that a court must still determine that the moving party is entitled to judgment as a matter of law even if the nonmoving party did not oppose the moving party's contentions). Based on such review, the court finds that the record, even when viewed in the light most favorable to the plaintiff, fails to establish a genuine issue of material fact with regard to whether the defendants violated the plaintiff's constitutional rights.

### *C. The Defendants' Contentions Regarding the Failure to Protect from Harm Claim*[1]

The defendants argue that no constitutional violation occurred because there is no evidence that shows they knew of and disregarded an excessive risk to the plaintiff's safety. In support of such argument, the defendants point out the following: (1) since 2006, the plaintiff has been incarcerated at several facilities within the Iowa Department

---

[1] Although the defendants contend that the plaintiff failed to comply with the requirements of 42 U.S.C. § 1997e(a) or exhaust the administrative remedies available to him, nothing prevents a review of the merits of the plaintiff's claim that a constitutional violation occurred as a result of the defendants' actions. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (finding exhaustion requirements under 42 U.S.C. § 1997e(a) not met and dismissing case under 42 U.S.C. § 1997e(c)).

of Corrections, including but not limited to the Fort Dodge Correctional Facility and the Newton Correctional Facility; (2) the plaintiff spent time at the Iowa Medical and Classification Center prior to arriving at the Anamosa State Penitentiary on October 9, 2012; (3) the plaintiff was placed at the Anamosa State Penitentiary because he had a tentative discharge date of 2054, a mandatory sentence that required him to be confined until 2020 and a custody score of 12; (4) the plaintiff was placed in general population and did not complain to staff about his safety or identify any enemies from October 9, 2012 to January 14, 2013; (5) on January 15, 2013, the plaintiff generally advised Dietsch that he wanted to be transferred to another prison because he had been affiliated with a gang and was having issues with inmates; (6) the plaintiff was unwilling to tell Dietsch the names of individuals who were causing him problems; (7) the plaintiff made clear that he did not want to be placed in protective custody; (8) in response, Dietsch documented the plaintiff's visit, sent an email to various prison officials, including Caspers, spoke with the plaintiff's counselor and started an investigation; (9) on January 17, 2013, the plaintiff complained to Dietsch that he was having problems with a black inmate named "Peter" and needed to be transferred; (10) the plaintiff stated that Peter was a friend of Dock and a gang member, that Peter approached him on the yard and challenged him about testifying against Dock in federal court and that Peter had other inmates approach him about testifying against Dock; (11) the plaintiff did not identify the other individuals that approached him and stated that he did not want or need to be placed in protective custody; (12) after meeting with the plaintiff, Dietsch wrote an incident report that was submitted to the prison security office for further investigation and she emailed the incident report to Caspers, the deputy warden and the plaintiff's counselor; (13) on January 23, 2013, Caspers informed Dietsch that an investigation revealed that the plaintiff was not affiliated with a gang, no evidence suggested the plaintiff was in danger and it appeared the plaintiff was attempting to manipulate a transfer to another prison; (14) Caspers also informed Dietsch that, although the plaintiff talked to federal officials about Dock, he did not testify against him and the

information he provided was not helpful or usable; (15) on January 31, 2013, the plaintiff and another inmate, Blanco, were involved in a fight; (16) as a result of fighting, the plaintiff received thirty days of disciplinary detention; (17) on March 7, 2013, the plaintiff asked to be moved out of administrative segregation; (18) in response, the warden told the plaintiff that the review committee had concerns about his release to general population and those concerns were being reviewed; (19) the plaintiff told those individuals who were reviewing his classification that he did not want to be in protective custody, and Blanco and the plaintiff assured their counselors that there would not be any additional problems; (20) the review committee returned the plaintiff to general population on March 12, 2013; (21) the plaintiff never complained about his safety from March 12, 2013 to May 8, 2013, that is, the date that he was assaulted by Griffin; (22) the plaintiff spent time in general population without being assaulted from March 12, 2013 to May 8, 2013; (23) the plaintiff never told any prison official that he was having problems with Griffin; (24) the plaintiff and Griffin remained in general population without incident for substantial periods of time between October 12, 2012 and May 8, 2013; (25) an investigation did not reveal why Griffin assaulted the plaintiff; (26) the plaintiff was placed in investigative segregation from May 8, 2013 to May 22, 2013 and, pursuant to his request, remained in voluntary protective custody from May 22, 2013 until his transfer; and (27) on July 23, 2013, the plaintiff transferred to another facility.

Although it is true that prisoners have a right to be free from violence at the hands of other prisoners, *see Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Latimore v. Widseth*, 7 F.3d 709, 712 (8th Cir. 1993) (holding that a plaintiff's "Eighth Amendment right . . . 'to be protected from harm by fellow inmates'" is "well established in the law" (quoting *Smith v. Marcantonio*, 910 F.2d 500, 501 (8th Cir. 1990))), not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety", *Farmer*, 511 U.S. at 834; *see also Andrews v. Siegel*, 929 F.2d 1326, 1330-31 (8th Cir. 1991) (noting that "some violence

7

in prisons may be unavoidable due to the character of the prisoners" (quoting *Martin v. White*, 742 F.2d 469, 475 (8th Cir. 1984)) (internal quotation marks omitted)). Rather, to establish an "unconstitutional failure to protect from harm [claim], [the plaintiff] must show (1) an 'objectively, sufficiently serious' deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant was deliberately indifferent to the substantial risk of serious harm." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (citation omitted) (quoting *Farmer*, 511 U.S. at 834); *accord Crow v. Montgomery*, 403 F.3d 598, 601-02 (8th Cir. 2005) (citing *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) and *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)); *see also Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002) (discussing what must be established to succeed on a constitutional failure to protect claim); *Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996) (stating that the first requirement is intended to "ensure[] that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension" and the second requirement is intended to "ensure[] that 'only the unnecessary and wanton infliction of pain implicates the [Constitution]'" (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991))).

Given the undisputed material facts, it cannot be said that any "act or omission [by the named defendants resulted] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The plaintiff fails to establish that the defendants were "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed].'" *Schoelch*, 625 F.3d at 1046 (quoting *Farmer*, 511 U.S. at 837); *see also Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (stating that a showing of deliberate indifference "mandat[es] the prisoner prove the official both knew of and disregarded 'an excessive risk to inmate health or safety'" (quoting *Farmer*, 511 U.S. at 837)); *Pagels*, 335 F.3d at 740 (providing that a prison guard's negligence is not enough to establish reckless indifference); *Jackson*, 140 F.3d at 1152 (pointing out that the matter of deliberate

indifference must be determined with regard to the relevant prison official's knowledge at "the time in question, not with hindsight's perfect vision" and that "'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm'" (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996))); *Andrews*, 929 F.2d at 1330 (stating that a plaintiff "'must show the defendant[] [was] deliberately indifferent to his constitutional rights, either because [the defendant] actually intended to deprive him of some right, or because [the defendant] acted with reckless disregard of his right to be free from violent attacks by fellow inmates'" (quoting *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984))).

The record indicates that: (1) nearly five months passed between the date that the plaintiff generally complained about his safety and the date that Griffin assaulted him, (2) the plaintiff always maintained that he should remain in general population, even after fighting with another inmate, (3) the plaintiff never identified anyone who made a specific threat against him and (4) the defendants and others took appropriate actions in response to the plaintiff's statements even though they lacked sufficient detail. Moreover, the plaintiff admits that he did not tell the defendants that an inmate posed a substantial risk of harm to him because he did not know who might assault him and insists that the defendants should have placed him in non-voluntary protective custody despite his assurances to them that he could be in general population. Consequently, the plaintiff offers insufficient facts to support the conclusion that the defendants or any other prison official acted in a deliberately indifferent manner. *See Prater*, 89 F.3d at 541-42 (finding that a prisoner failed to show that a prison official "actually knew of the risk" to the prisoner when the prisoner told the official that he received threats from his roommate because, in part, after reporting the threats, the prisoner and his roommate told the official that there would be no trouble and the two "were incarcerated together for a substantial period of time without incident"); *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994) (determining that defendants did not act with deliberate indifference by refusing to

place inmate in protective custody based on his general fear for his safety); *cf. Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (clarifying that a jury may infer that an official must have known of the risk if there is evidence of very obvious and blatant circumstances indicating a risk to an inmate). Thus, the defendants are entitled to judgment as a matter of law.

### D. The Defendants' Other Argument

Having concluded that the defendants are entitled to judgment as a matter of law because the record fails to establish a genuine issue of material fact with regard to whether the defendants violated the plaintiff's constitutional rights, it is unnecessary to review the defendants' remaining contention that they are entitled to qualified immunity. Nonetheless, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law", *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and the record does not establish that it would have been clear to a reasonable officer that the defendants' conduct was unlawful in the situation that they confronted, *see Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). This is especially so because the undisputed evidence indicates that no one, including the plaintiff, believed he faced a substantial risk of serious harm or that the defendants subjectively acted, or failed to act, with deliberate indifference to the plaintiff's safety. *See Berry v. Sherman*, 365 F.3d 631, 634-35 (8th Cir. 2004) (concluding that officials were entitled to qualified immunity because they investigated information they received and had no notice of an attack); *Pagels*, 335 F.3d at 740-42 (deciding that district court improperly denied officer qualified immunity because officer did not have actual knowledge of a credible threat of serious harm to inmate and he responded in an objectively reasonable way); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) (finding that record did not support the conclusion that an officer was deliberately indifferent to a risk to an inmate).

*E. Summary*

The court afforded the plaintiff the benefit of all reasonable inferences, but the record fails to establish a genuine issue of material fact with regard to whether the defendants failed to protect the plaintiff from harm or whether the defendants are entitled to qualified immunity. Given the undisputed material facts, it is appropriate to enter judgment in favor of the defendants.

*IV. CONCLUSION*

**IT IS THEREFORE ORDERED:**

(1) The defendants' motion for summary judgment (docket no. 24) is granted.

(2) The clerk's office is directed to enter judgment in favor of the defendants.

(3) The clerk's office is directed to close this case.

**DATED** this 16th day of September, 2014.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA